## WATT et al. *v.* RICE.

Sect. 9 of the stat. of Mississippi of 9th June, 1822, authorizing the defendant in an action commenced by an assignee of certain written instruments, to set up any defence which he might have pleaded against the original payee or creditor, does not apply to bills of exchange.

An advantage stipulated for a third person, is a sufficient consideration for a contract. C. C. 1884. C. P. 35.

The release of an endorser and accommodation acceptor of a bill of exchange, in order to use their testimony in an action against the drawer, will not discharge the latter.

Where the party against whom a verdict and judgment had been rendered, applies for a new trial, but, on the filing of a written consent thereto by the opposite party, requests the court to overrule his motion, stating that it was made *pro formâ* in order to obtain an appeal, he will not thereby preclude himself from relief on the appeal, where the circumstances of the case show that his object was to prevent the delay which would result from a new trial, and to obtain, as soon as possible, a final decision by the court in the last resort.

APPEAL from the District Court of Concordia, *Curry*, J.

*T. P. Farrar*, for the appellants. *Stacy* and *Sparrow*, for the defendant.

The judgment of the court was pronounced by

SLIDELL, J. This suit is brought against *Mary Rice*, widow in community, and natural tutrix and subsequently heir of the child, of *William R. Haile*, deceased, upon a bill of exchange of the following tenor:

                                       Natchez, February 16, 1837.

Exchange for $8580.

Twelve months after date of this first of exchange, second of same tenor

and date unpaid, pay to the order of *Daniel G. Barlow* $8580, payable at the      <span style="float:right">WATT<br>*v.*<br>RICE.</span>
Bank of Louisiana, New Orleans, value received, and charge the same to the
account of

    To Mr. NOAH BARLOW,                        WILLIAM R. HAILE.
       Natchez.

(Inscribed on the face of the note) Accepted.

NOAH BARLOW.

(Endorsed) Pay *Warren Offutt*, or order,

D. G. BARLOW.

      Pay *Watt, Burke & Co.*, or order,

WARREN OFFUTT.

It is alleged in the petition that the note was drawn, endorsed, accepted and negotiated to the plaintiffs, at Natchez, in the State of Mississippi. The petition contains the usual allegations of demand at the place of payment, protest, notice, &c.; and by a supplemental petition it is alleged that, since the death of *Haile*, and previous to the marriage of his widow with *Rice*, she then being a *femme sole*, expressly undertook and assumed the payment of the bill to the plaintiffs.

I. The defendant alleges that the contract was void, by reason of the fact that the consideration of this bill was the sale in Mississippi of certain negroes, by *Offutt*, the second endorser, to *Haile & Barlow*, joint purchasers, in violation of the constitution of Mississippi, adopted in the year 1833, which contains the following provisions :

" Section 1. The legislature shall have no power to pass laws for the emancipation of slaves, without the consent of their owners, unless where the slave shall have rendered to the State some distinguished service, in which case the owner shall be paid a full equivalent for the slave so emancipated. They shall have no power to prevent emigrants to this State from bringing with them such as are deemed slaves by the laws of any one of the United States, so long as any person of the same age or description shall be continued in slavery by the laws of this State : Provided that, such person or slave be the *bonâ fide* property of such emigrant : and provided also that, laws may be passed to prohibit the introduction into the State, of slaves who have committed high crimes in other States. They shall have power to pass laws to permit the owner of slaves to emancipate them, saving the rights of creditors, and preventing them from becoming a public charge. They shall have full power to oblige the owner of slaves to treat them with humanity, to provide for them necessary clothing and provisions, to abstain from all injuries to life or limb, and, in case of their neglect or refusal to comply with the directions of such laws, to have such slave or slaves sold for the benefit of the owner or owners.

" Section 2. The introduction of slaves into this State as merchandize, or for sale, shall be prohibited from and after the first day of May, 1833, provided that the actual settler or settlers shall not be prohibited from purchasing slaves in any State in this Union, and bringing them into this State for their own individual use, until the year 1845.

" Section 3. In the prosecution of slaves for crimes of which the punishment is not capital, no inquest by a grand jury shall be necessary; but the proceedings in all such cases shall be regulated by law."

The defendant further contends that, by virtue of the laws of Mississippi, he has the same right to set up this illegal consideration against the plaintiffs,

WATT
v.
RICE.

who, it is not contested, are *bonâ fide* holders, which they would have had if the suit were now brought by *Offutt*, the plaintiffs' endorser. We observe, in passing, that there is no clause of express avoidance in the constitution of Mississippi; and also that, there has even been a conflict between the decisions of the state tribunals and of the Supreme Court of the United States, whether the contract was invalid between the original parties. See 6th Rob. 116.

If it be assumed that the nature of the consideration would have furnished a good defence against *Offutt*, still we incline to the opinion that, the 9th section of the act of the legislature of Mississippi, passed 25th June, 1822, upon which the defendant relies, does not apply to the case before us. The suit here is upon a bill of exchange. If however there be a doubt as to the liability of the defendant upon the bill alone, under the constitution and statute of Mississippi, there are other circumstances in this case which sustain the plaintiffs, and which, under the authority of the case of *Pease v. Ballard*, recently decided by the chancellor of Mississippi, would incapacitate the defendant to invoke the alleged original illegality of the contract.

After the death of *Rice*, the slaves originally purchased having been brought to Louisiana by *Haile* and *Barlow*, and *Haile* having died, *Barlow* made a sale to *Mrs. Rice* of his half interest in these slaves, and of another slave, of which he was sole owner, and which had no connection with the original contract; also of the undivided half of all the stock, farming utensils, household furniture, &c., on the plantation which they had jointly cultivated in this State. The consideration of the entire sale was the assumption by *Mrs. Rice* of the payment of the whole amount of the draft in question, and of another joint debt of *Haile* and *Barlow*. She received the sole possession and ownership of these slaves, and has had them ever since.

To the natural obligation which bound her *in foro conscientiæ*, was superadded a new consideration, the acquisition of a new ownership of this and other property, disconnected with the original agreement; a consideration moving from a party who, being himself bound in conscience for the debt thus assumed, did not desire to repudiate it, but sought on the contrary to protect and secure it. We should not feel justified in refusing to a *bonâ fide* holder the benefit of this stipulation, made in our own State, whose laws and policy have not been offended, when, under the opinion of the chancellor in the case referred to, we may conclude that a Mississippi tribunal would have enforced the present claim. See also Civil Code, art. 1884, and Code of Practice, art. 35.

II. The release of the endorser and of the acceptor did not affect the liability of the drawer.* The endorser was a subsequent party, and the drawee was purely an acccommodation acceptor.

III. As to the liability of the wife by reason of her unqualified acceptance of the community, and of the child's succession, and of her having appropriated the property of the succession to her own use as absolute owner, the facts are so clearly established that we have no hesitation in considering her as having bound herself unqualifiedly for *Haile's* indebtedness to the plaintiffs. Civil Code, arts. 982, 2378.

IV. As to the application made by the plaintiffs' counsel for a new trial, and his declaration that it was made *pro forma*, and that he desired it to be over-

* These parties were released by the plaintiffs in order to make them witnesses.

ruled, we do not consider it, under the circumstances exhibited by the bill of exceptions, as barring him from relief in this court.*

It is therefore decreed that the judgment of the court below be overruled; and it is further decreed that the plaintiffs recover of the defendant, *Mary Rice*, the sum of $8580, with interest thereon from the 19th day of February, 1838, till paid, and costs in both courts.

WATT
*v.*
RICE.

---

* The bill of exceptions, which was taken by the defendant, recites: "That after the plaintiffs' counsel had filed their motion to set aside the verdict of the jury and grant them a new trial, defendant's counsel immediately, in open court, and in the presence of plaintiffs' counsel, consented that said new trial might be granted, and filed their written consent thereto; whereupon, plaintiffs' counsel requested the court to overrule their motion for a new trial, when the court, although requested by plaintiffs', and assented to by defendant's counsel, refused to set aside the verdict and judgment, to which defendant's counsel excepted, &c. Plaintiffs' counsel added: They stated to the court that the only object of the defendant's counsel was to delay the case. well knowing the difficulty of getting a jury, owing to the sparse population of the parish; that plaintiffs' motion for a new trial was *pro forma*, in order to pave the way to an appeal, that they might get a final determination of their case; that plaintiffs' counsel stated to the court as their opinion that, if the court was satisfied that the case had been fairly and properly tried, it was the duty of the court to overrule the motion for a new trial; that plaintiffs' counsel have no recollection of having requested the court to overrule their motion. but they certainly did hope and expect that it would be overruled, for the reasons above stated."